The cause was heard by chancellor James, who after stating the case, delivered the following decree :
In this case the statement made by the hill of complaint, that Aaron Snowden and Mandeville entered into a scheme To defraud complainant of his right to the *89 lauds in question, has been positively denied in tbe answer of the defendant Mandeville, and therefore, as no evidence has been offered to support this charge of gross fraud, the answer must be allowed its usual weight, and the defendant Mandcville must be acquitted of'this charge. The ground principally insisted on by the complainant’s counsel, was that Mandeville became a purchaser at sheriff’s sale, with notice of the complainant’s claim, and therefore, that lie must still be considered as a trustee for him. This conclusion is founded upon a supposition, that the claim of the complainant is a good one, of which we shall see more hereafter $ but, admitting at present that such claim has been made out to the satisfaction of the court, let us examine the question of notice as brought home to Mandeville. For this purpose, the evidence of Mrs. Frazier, the sister of complainant, and of William L. Thomas, the sheriff of Marlborough county at the time of the sale, has been chiefly relied upon. Mrs. Frazier states, that Mandeville, at the time she was fifteen years of age, lived in the sandhills, near - her mother j planted lands in the swamp not far off, and that he frequently staid at their house before he made tbe purchase 3 and that her mother often told him of the situation of the lands, and that the right was in her children. That she told him so at least twice, in the summer before he took possession of it. She also states, that she heard her mother tell Mandcville, that if he bought the land he would buy a lawsuit •, hut cannot he clear as to the time when -the last conversation took place, whether before or after the sale. She thinks the first conversation was in the summer prior* to the sale. Witness states she is'now thirty years of age. William L. Thomas was sheriff of Marlborough, and had advertised the land j but before he sold, he heard from captain John James how Snowden had got possession of it, and would not proceed in the business. He thinks he told Mandeville, that the transaction on the part of Snowden, was fraudulent; and his i^hon for thinking* he told Mandeville so, was because he was the only person who then wished to purchase i hut ho is not positive *90 tlvat he told Mandeville so. That the sale took place by }ijg deputy, in June 1788 : and he signed titles to Man-deville some time after. That the subject of Snowden’s fraud, was a matter much spoken of, and'of general no-toricty. The witnesses on the part of the complainant, also generally deposed, that the place went by the name of Hughson’s place: But one of them, Frances Bridges, stated that it was called Hughson’s, until the marriage of his widow with Snowden, and afterwards Snowden’s •land.
The whole of this evidence, so far as it goes to establish the notice, has been contradicted by the answer, in which Mandeville positively denies, that he ever was cautioned against making the purchase, or paying for it, &c. Now the evidence of Mrs. Frazier, and of the sheriff, Mr. Thomas, -not being positive, and that of the defendant being so, it would appear from the rule commonly adopted in equity, that the answer must be considered good, unless contradicted by two witnesses, or the evidence of one with circumstances corroborating it. But the evidence of Mrs Frazier is very vague. To shew this, it will only be necessary to resort to another part of Thomas’s testimony, which states, that Mandeville lived at Cashway ferry, sixteen miles below Mrs. Ilughson’s, until the fall of 1785. Now, if Mrs. Frazier was, as she says, fifteen years old at the time of the conversations which she mentions were held in the summer, before the purchase, between her mother and Mandeville, and is now thirty-one years of age, those conversations must have taken place in 1784, ami not in 1788, before the sale was made, as she would have us believe ; but here is a difference of four years, which shews,, that although she may be actuated by a sincere intention to speak the truth, that yet her recollection upon the subject must he exceedingly vague, and insufficient for this court to rely upon so far as to overthrow a positive answer. jEut, say the complainant’s counsel, if tliis evidence is inefficient to prove a positive notice, yei it was enough to put a prudent man on his guard,' — 'and upon enquiry ¿ therefore, upon the authority cited from *91 1st Atkins, 430, and others, it must be construed a good notice. Let us hero examine, whether, if the defendant had been put upon such enquiry, it is probable he would have acted in any other manner than he has done at present ;■ and here is the proper place to consider the nature of the claim of the complainant, when compared with that of Snowden. The claim of the complainant as heir at law of his father, as stated by Mr. Torrall, arose from the purchase of the land made by his father from Dyer, the part payment for the same, and possession of and for seven years, accompanied with a bond from Dyer to make titles, which- has either been destroyed or lost: liad the defendant, therefore, even, had the chance to have met with this witness, he would have been a very imprudent man to have made the purchase upon the strength of such a title as he has stated. It is evidently defective. Again, had the defendant been informed of the deed from Dyer to the mother, or if it had ever been shewn him, he would have found a solitary instrument unaccompanied by any grant or other papers^ to make out a claim of title : and besides never recorded 5 whereas, if he had examined Snowdon’s title, he would have found it deduced in a regular chain from Benjamin lingers, the grantee in 1743.; to Dyer, and from Dyer to Snow-den, and the last deed by him regularly recorded. What then, would a prudent man have done? The probability is, he would have acted as Mandeviile has done. The inference, therefore, is, that if the present defendant had, even by the conversation stated and upon the general notoriety, been put upon the enquiry, it could have had no other effect, than to induce him, as a prudent man, to prefer the title of Snowden $ therefore, such aa enquiry could have been of no use. So much for the complainant’s ground of notice to the defendant of the fraudulent conduct of Snowden.
But the defendant relics upon his long possession and the laches of the complainant, and very properly so t .Although this court may not determine that an equitable title is strictly barred by the act of limitations, in the same manner as a legal estate, yet it will always act *92 upon the spirit of that 3aw,- ami if a complainant has slept over his rights it will not grant him relief. The complainant in this case is now nearly thirty-four years of age, the defendant has been in possession under the, sheriff’s title, and improving the lands ever since June ir98, almost fourteen years; and the bill in this case was never,filed until the 21st July last. Now there being no fraud nor any trust proved, it appears to be high time the defendant’s claim should be at rest. Therefore, for all these reasons, let the complainant’s hill be dismissed with costs, as to the defendant Mandeviile.
W. D. James.